# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Jun 07, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
 ) Case No. 24 MJ 114
Data associated with the following Google Account associated )
with Gmail: m.arnoldmi@gmail.com hosted by Google LLC, )
1600 Amphitheatre Parkway, Mountain View, California, 94043 )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1073 | Flight to Avoid Prosecution |

The application is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.
☑ Delayed notice of  180  days *(give exact ending date if more than 30 days:*  12/02/2024  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

CLINTON BLAUSER  Digitally signed by CLINTON BLAUSER
Date: 2024.06.06 09:46:34 -05'00'

*Applicant's signature*

Clinton Blauser, Deputy U.S. Marshal, USMS
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
 telephone  *(specify reliable electronic means)*.

Date: 06/07/2024

*Judge's signature*

City and state: Milwaukee, WI    Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Clinton Blauser, being duly sworn, hereby depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Deputy United States Marshal with the United States Marshals Service and, as such, am charged with enforcing all laws in all jurisdictions of the United States, its territories and possessions. I have been a member of the United States Marshals Service (USMS) for 14 years and have investigated multiple fugitive cases including State, Federal and International wanted subjects. I have obtained my Criminal Investigator Certification at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by law to conduct investigations.

2. This Affidavit is made in support of an application for a search warrant to search the Target Account, more fully described in Attachment A, for evidence and instrumentalities, more fully described in Attachment B, for a violation of Title 18, United States Code Section 1073, Flight to Avoid Prosecution, and Title 18, United States Code Section 2, aiding and abetting an offense against the United States.

3. The facts set forth in this Affidavit are based upon my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses. This Affidavit is intended to show that there is probable cause to believe that evidence, instrumentalities, and proceeds, more fully described in Attachment B, for the subject offenses listed above will be found in the subject accounts, more fully described in Attachment A, and does not purport to set forth all of my knowledge of or investigation into this matter.

1

## STORED WIRE AND ELECTRONIC COMMUNICATION ACCESS

4. Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

   a. Title 18, United States Code, Section 2703(a) provides, in part:

   A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

   b. Title 18, United States Code, Section 2703(b) provides, in part:

   (1) A governmental entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection

   (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant☐.

   (2) Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained on that service

   (A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computer service; and
   (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

c. The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. See 18 U.S.C. § 2703(c)(1)(A). No notice to the subscriber or customer is required. See 18 U.S.C. § 2703(c)(3).

d. The statute permits the warrant to be served on the provider, who will then disclose the relevant records to the officer, who need not be onsite at the time the search is executed. Title 18, United States Code, Section 2703(g), provides, in part:

> Presence of Officer Not Required   Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber to or customer of such service.

e. Title 18, United States Code, Section 2711, provides, in part:

> As used in this chapter
>
> (1) the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section;
>
> (2) the term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

f. Title 18, United States Code, Section 2510, provides, in part:

> (8) "contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication; . . .
>
> (14) "electronic communications system" means any wire, radio, electromagnetic, photo optical or photo electronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications; . . .

3

(15) "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications; . . .

(17) "electronic storage" means

(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

(B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

## BACKGROUND CONCERNING GOOGLE

5. Google is an American multinational technology company that offers to the public, through its Google Accounts, a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome and a free search engine called Google Search.

6. In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device.

7. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the login username for access to the Google Account. Enterprises may also establish Google Accounts which can be accessed using an email address at the enterprise's domain (e.g. employee[@]company.com).

8. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered

4

to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

9. **GMAIL:** Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

10. **CONTACTS**: Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their mobile phone or device address book so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them.

11. **CALENDAR:** Google provides an appointment book for Google Accounts through Google Calendar. Users can create events or RSVP to events created by others in Google Calendar. Google Calendar can be set to generate reminder emails or alarms about events or tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars. An entire calendar can be shared with other Google Accounts by the user or made public so anyone can access it. Users have the option to sync their mobile phone or device

5

address book so it is stored in Google Calendar. Google preserves appointments indefinitely, unless the user deletes them.

12. **GOOGLE TASKS and GOOGLE KEEP:** Google also provides online to-do lists and notepads for Google Accounts. Google Tasks allows users to assign themselves tasks to be completed at scheduled times and marked complete when done. Google Keep allows users to create notes or lists. These notes can be shared with other users to edit. Users can set notifications at particular dates and times for both tasks and notes. Google preserves tasks and notes indefinitely, unless the user deletes them.

13. **WEB-BASED CHATS and MOBILE MESSAGING:** Google provides a number of direct messaging services accessible through a browser or mobile application, including Duo, Messages, Hangouts (Chat and Meet), and the now-retired Allo and Chat. These services enable real-time communications. Users can send and receive text messages, videos, photos, locations, links, and contacts from their Google Account using these services. Chat and Hangouts require or required the other user to also have a Google Account. Duo, Messages, and Allo do or did not. Google preserves messages sent through these services indefinitely, unless the user turns off the setting to save conversation history or deletes the message.

14. **GOOGLE DRIVE:** Google Drive is a cloud storage service automatically created for each Google Account. Users can store documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can also set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a

subscription plan called Google One. In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them.

15. **GOOGLE PHOTOS:** Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

16. **GOOGLE MAPS and GOOGLE TRIPS:** Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

17. **GOOGLE PLAY:** Google Accounts can buy electronic media, like books, movies, and music, and mobile applications from the Google Play Store. Google Play records can include

records of whether a particular application has been or is currently installed on a device. Users cannot delete records of Google Play transactions without deleting their entire Google Account.

18. **GOOGLE VOICE:** Google offers a service called Google Voice through which a Google Account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely, unless the user deletes them.

19. **GOOGLE CHROME:** Google offers a free web browser service called Google Chrome, which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account.

20. **YOUTUBE:** Google also offers a video platform called YouTube that offers Google Accounts the ability to upload videos and share them with others. Users can create a YouTube channel where they can upload videos, leave comments, and create playlists available to the public. Users can subscribe to the YouTube channels of others, search for videos, save favorite videos, like videos, share videos with others, and save videos to watch later. More than one user can share control of a YouTube channel. YouTube may keep track of a user's searches, watch history, likes, comments, and change history to posted videos.

21. **INTEGRATION OF GOOGLE SERVICES:** Google integrates these various services to make it easier for Google Accounts to access the full Google suite of services. Users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout and Chat conversations pop up within the same browser window as Gmail.

Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

22. **SUBSCRIBER RECORDS:** When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

23. **ACCESS RECORDS:** Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

24. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a

communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

25.     **BROWSING, SEARCH, and APPLICATION USE HISTORY:** Google collects and retains data about searches that users conduct within their own Google Account or using the Google Search service, including voice queries made to Google Assistant. Google also has the capacity to track the websites visited using its Google Chrome web browser service, applications used by Android users, and the use of Google applications by iPhone users. According to Google, this search, browsing, and application use history may be associated with a Google Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google also collects and retains data about the voice queries made to its artificial intelligence-powered virtual assistant, Google Assistant, on Android devices and associated it with the registered Google Account if certain global settings are enabled, such as Voice & Audio Activity tracking. Google maintains these records indefinitely, unless the user deletes them.

26.     **LOCATION HISTORY:** Google collects and retains data about the location at which Google Account services are accessed from any mobile device regardless of service usage. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of

10

searches about places to eat in New York and directions from one New York location to another. Google maintains these records indefinitely, unless the user deletes them.

27. Google also maintains records of the device characteristics of iPhones used to access Google services, including the make and model of the device. Depending on user settings, those records may be associated with the Google Account logged into the service in use on the device. Google maintains these records indefinitely, unless the user deletes them.

28. In my training and experience, evidence of who was using a Google Account, and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. I also know, from my training and experience, that individuals who activate a Google Account for the purposes of only using a particular Google service (commonly email) will frequently generate records related to other services available with a Google Account, even inadvertently. This evidence may establish the "who, what, where, when, why, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. This can be true even if subscribers insert false information to conceal their identity; this information often nevertheless provides clues to their identity, location or illicit activities. This is also true of fugitive investigations, in which location data can provide real time or historical patterns, which can assist law enforcement in identifying a possible location of a fugitive in order to effect an arrest.

29. For example, the stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

11

30. In addition, the user's account activity, logs, stored electronic communications, location history, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). This sort of location data—in addition to the Location History information described above—is especially pertinent where, as here, there has been criminal activity at a specific location, and law enforcement must work to confirm the identity of individuals at that specific location.

31. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the Google Account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement). In my training and experience, I know that drug

12

traffickers typically use a wide variety of electronic media, including emails, to communicate with customers, associates, and sources-of-supply, and review of such communications can yield valuable evidence of this sort.

32. Other information connected to a Google Account may lead to the discovery of additional evidence. For example, the identification of apps downloaded from the Google Play Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

33. Therefore, Google's servers are likely to contain stored electronic communications and information concerning ARNOLD and his use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation, including information that can be used to identify the account's user or users, their location(s) and activities at certain times relevant to the offenses at issue, the identities of their accomplices and co-conspirators, communications with those accomplices and co-conspirators, and actions taken and research performed relating to the criminal offenses at issue.

## **PROBABLE CAUSE**

34. On or about February 15, 2024, Miles ARNOLD was charged by Criminal Complaint in the Eastern District of Wisconsin, case number 24-M-337 in violation of Title 21 U.S.C. Sections 841(a)(1), 841 (b)(1)(A), 846, and Title 18 U.S.C. Section 2. Additionally, a federal arrest warrant was issued for Miles ARNOLD (DOB: 8/16/1987) on the same date. On February 21, 2024, the Drug Enforcement Administration (DEA) conducted a search warrant at ARNOLD's residence in Phoenix, Arizona. Prior to executing the search warrant, DEA had

13

confirmed flight information that ARNOLD was overseas in Vietnam and was scheduled to travel back to the U.S. on February 22, 2024.

35. While the DEA was present at ARNOLD's home and his roommate was temporarily detained, the roommate received a text message from ARNOLD from his Gmail account: m.arnoldmi@gmail.com. The text message stated, "Hey r u home??? Don't tell anybody my travel plans, Don't say anything about anything. I don't know why they are there but you don't know shit about anything cuz you literally don't know shit about anything." According to case agents, ARNOLD's home was wired with a video surveillance security system, and it was believed that ARNOLD was able to observe the police activity at his home in real time.

36. On February 22, 2024, ARNOLD failed to board his scheduled flight to return to the U.S. and is thus considered a fugitive. The DEA delegated the case to the United States Marshals Service to assume apprehension authority.

37. On February 26, 2024, investigators with the USMS obtained information that ARNOLD was in Cambodia from law enforcement sources abroad.

38. On or about March 19, 2024, ARNOLD was federally indicted in the Eastern District of Wisconsin-Milwaukee and charged with Title 21, United States Code Sections 846(b)(1)(A), 841(b)(1)(A), 841(b)(1)(B) and Title 18, United States Code Section 2(a) Conspiracy to Distribute Controlled Substances.

39. Based on your affiant's training and experience in locating and apprehending fugitives, the data being sought by this warrant will assist in locating ARNOLD. Because successful apprehensions often rely on the element of surprise, it is often necessary to attempt an arrest during nighttime or the early morning hours, when most people are sleeping. Further, apprehension tactical plans often change at the last minute based on unexpected movement or other behavior of the target. Therefore, I cannot predict in advance when this data would need

14

to accessed and would need access to the data at all times of the day or night in order to ensure a safe and successful apprehension.

40. The affiant believes that the information described in Attachment B will assist the United States Marshals Service in locating ARNOLD and will help Cambodian authorities with his apprehension. As of the date of this affidavit, the arrest warrant remains active.

## CONCLUSION

41.     Based on the forgoing, I request that the Court issue the proposed search warrant. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems in the control of Google there exists location information that can assist law enforcement with the arrest of ARNOLD, who is wanted for the crime of violations defined in Title 21, United States Code Sections 846(b)(1)(A), 841(b)(1)(A), 841(b)(1)(B) and Title 18, United States Code Section 2(a) Conspiracy to Distribute Controlled Substances.

# ATTACHMENT A

This Search Warrant is being sought for the data specified in Attachment B associated with the following Google Account associated with Gmail: **m.arnoldmi@gmail.com** hosted by Google LLC, 1600 Amphitheatre Parkway, Mountain View, California, 94043.

# ATTACHMENT B

I. **Information to be disclosed by Google LLC (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google LLC, Google LLC is required to disclose the following information to the government for each User ID listed in Attachment A:

(a) All physical location data collected by Google LLC for the user of the account, including any data collected by Google LLC's location services via the user's mobile phone or other device, on a real-time or near-real time basis. Google LLC is required to provide any such data they collect, regardless of the time of day.

II. **Information to be seized by the government**

(a) All data disclosed by Google LLC pursuant to this attachment. This data shall be made accessible by the provider to the United States Marshals Service 24/7, day or night, and/or emailed to Deputy United States Marshal Clinton Blauser at Clinton.blauser@usdoj.gov

III. **Time for production by provider**

The provider shall begin producing the information required by this attachment within seven (7) days of the date of service of the warrant.

IV. **Duration of production**

The provider shall produce the information required by this attachment for a period of thirty (30) days from the date of issuance of this warrant.